# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JAMESON LAND COMPANY, LLC,

     Plaintiff,

Case No. 8:15-cv-409-T-27AAS

v.

MOSAIC FERTILIZER, LLC,

     Defendant.

_____/

## MOSAIC FERTILIZER'S OPPOSITION
## TO PLAINTIFF'S MOTION TO OVERRULE AND COMPEL (DKT. 43)

"Deadlines do not grant the parties carte blanche rights to demand sizeable discovery requests up to the last possible minute. Discovery is meant to be a balanced and, hopefully, front-loaded process, not one involving deadline brinkmanship." *Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040, 1044 (S.D. Iowa 2010) (citing, *inter alia*, *Hinson v. Clinch County,* 231 F.3d 821, 826 (11th Cir. 2000) (holding that a court did not "abuse its discretion in denying . . . [a] motion to compel production due to . . . delay in bringing the motion")).

**Filed at 4:45 p.m. on the day of the discovery cutoff**—and over four months and twenty-four depositions after receiving Mosaic's written discovery responses—Plaintiff's Motion to Overrule Defendant's Objections and Motion to Compel Discovery (Dkt. 43) calls for post-deadline discovery that could, unquestionably, have been avoided. Moreover, the relief requested would be staggering. Plaintiff asks this Court to compel, "without caveat" (*id.* at 9), a production responsive to requests and interrogatories that implicate decades of activity by thousands of people on tens of thousands of acres of land.

This production would be in addition to the nearly 22,000 pages of documents already provided months ago in response to the same requests. Plaintiff makes no effort to explain why this additional, last-minute production would be relevant to its claims or proportional to its needs. Instead, Plaintiff attempts to justify the request based solely on feigned prejudice from certain discovery practices (*e.g.*, asserting general objections) that, ironically, **Plaintiff used in every one of its own responses**.

Mosaic opposes the Motion and respectfully requests that the Court deny it as untimely, unwarranted, and inequitable.

## BACKGROUND

### I. The Claims and Defenses.

Plaintiff, Jameson Land Company, LLC ("Jameson"), is a single-purpose entity formed by a real-estate investment group in late 2010, to acquire eight rural properties in Hillsborough and Polk Counties (collectively, the "Properties"). The most valuable of the Properties is located on the eponymous Jameson Road. Jameson purchased the Properties "as is" in 2011 from two Texas-based oil and gas speculators who had, in turn, blindly[1] purchased the Properties at auction in 2009 from a trust affiliated with JP Morgan Chase Bank. The trust had owned the Properties for at least the four preceding decades and had leased them, for much of that time, to a predecessor of Mosaic for phosphate mining.

After unsuccessfully attempting to trade some of the Properties to Mosaic for a parcel contiguous with Jameson's Jameson Road tract, Jameson filed this action. In nine counts, Jameson alleges that Mosaic harmed it in several disparate ways, including by: (a) breaching (by inaction) two mineral leases entered into between the parties'

---

[1] The Texans never wanted the Properties in the first place, having acquired them as part of a larger bundle of parcels, and they quickly searched for buyers. The Texans owned the Properties for only fourteen months before selling them to Jameson.

Greenberg Traurig, P.A.

predecessors in 1964 and 1965; (b) subjecting the Properties to State-imposed, post-mining reclamation obligations; (c) granting utility easements across the Properties; (d) allowing pollutants from the Mosaic's New Wales facility to contaminate the soil and groundwater beneath the one of the Properties; and (e) falsely claiming ownership of the Properties.

Unfortunately for Jameson, the extensive discovery already conducted in this action has revealed, among other things, that: (a) the mineral leases required extensions to be in writing, and no written extensions exist beyond 2005 (*i.e.*, the leases expired a decade before Jameson filed this action); (b) Jameson knew well before closing that the Properties had been mined; (c) the post-mining reclamation obligations associated with the Properties—which are mandated by governmental agencies—were easily discernable, especially for a sophisticated real-estate investment group—well before Jameson purchased the Properties in "**as is**" condition; (c) Jameson had actual knowledge of the utility easements before purchasing the Properties "as is"[2]; (d) Jameson's contamination allegations are founded exclusively on a single set of out-of-date well-sampling data from 2010–2011, which affirmatively contradicts Jameson's position; and (e) any confusion regarding ownership of the Properties was resolved quickly and without harm to Jameson.

Accordingly, all of Jameson's claims should fail as a matter of law, both for lack of proof and as barred by one or more of Florida's many commonsense defenses, including *caveat emptor*, the economic-waste doctrine, the statute of limitations, and potentially the statute of frauds. Nevertheless, Jameson, which purchased the properties for just over $1,000,000 (roughly half their market value, by most accounts), continues to claim upwards of $50,000,000 in damages, largely for purportedly diminished property

---

[2] Indeed, these easements clearly appear in both Jameson's pre-closing title insurance commitment and in the title insurance policy subsequently issued to Plaintiff.

Greenberg Traurig, P.A.

value and clearly necessary remediation. It is against that backdrop that Jameson now seeks, without explanation, additional post-deadline discovery.

## II.     The Course of Discovery.

Written discovery began in earnest in this action on November 23, 2015, when Mosaic propounded its Initial Request for Production of Documents. Jameson responded on December 31, 2015, and then amended its response on January 8, 2016. **Notably, even after amendment, Jameson employed the precise discovery-response practices of which it now accuses Mosaic**: *i.e.*, a combination of generalized objections at the outset of a response followed by boilerplate objections throughout. (*See* Pl.'s Am. Resp. to First Req. for Produc., Ex. A; *see also* Pl.'s Resp. to Second Req. for Produc., Ex. B.) The same was true of Jameson's interrogatory answers. On January 8, 2016, Mosaic served its First Set of Interrogatories, and on February 11, 2016, Jameson answered subject to a two-page set of boilerplate "general objections and limitations." (Pl.'s Answer to First Interrogs., Ex. C.) Thus, Jameson's Motion is truly, "the pot calling the kettle black."

Jameson served its own First Request for Production (Ex. D, the "Requests") and First Set of Interrogatories (Ex. E, the "Interrogatories"), both now at issue here, on January 20, 2016. Due largely to a combination of unbounded requests (*e.g.*, no temporal or restrictions whatsoever) and expansive definitions (*e.g.*, defining "Defendant" as Mosaic *and* its predecessors, which would include, for example, IMC Global, a company formed *over a century* before Jameson), Jameson's Requests and Interrogatories called for a massive amount of responsive information. (*See, e.g.*, Ex. D, pp. 1–4 (expansively defining Request terms); Ex. E, pp. 3–6 (same for Interrogatory terms).) Accordingly,

4

when Mosaic responded on March 18, 2016, it followed Jameson's lead and objected, both generally and by Request- and Interrogatory-specific objections.

Unlike Jameson, however, Mosaic attempted to state its objections with specificity and to alert Jameson to when Mosaic would be narrowing the scope of a search for responsive documents.[3]  For comparison, when Mosaic requested all "documents reflecting any instances in which Plaintiff or any person acting at [Plaintiff's] request . . . entered the New Wales Tract or performed any activities there," this was Plaintiff's response:

> Plaintiff objects to this Request on the grounds that it seeks documents that are not relevant to either party's claims or defenses, and is not otherwise discoverable under Fed. R. Civ. P. 26(b).

(Ex. A, ¶ 48.)  Jameson's objection is truly "boilerplate."  It could be cut and pasted into any response to any request in any case, and it would provide just as much (or little) information regarding the basis for the objection and the scope of the responsive search, if any.  By contrast, when Jameson parroted essentially the same request back to Mosaic (Ex. D, ¶ 22 (requesting "[a]ll documents reflecting any instances in which any person has entered the Property on behalf of Defendant")), Mosaic responded as follows:

> Mosaic objects to this request on the grounds that it is not limited to any specific or reasonable timeframe, and is therefore overly-broad, unduly burdensome, and not proportional to the needs of this case.  Mosaic or its predecessors have leased or owned the Property relevant to this litigation at various times dating back to at least 1964.  Asking Mosaic to provide the requested documents covering a period of potentially more than 50

---

[3]  *See* Fed. R. Civ. P. 34 advisory committee's note to 2015 amendment ("Rule 34(b)(2)(C) is amended to provide that an objection to a Rule 34 request must state whether anything is being withheld on the basis of the objection. This amendment should end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections. **The producing party does not need to provide a detailed description or log of all documents withheld, but does need to alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection. An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been 'withheld.'"** (emphasis added).)

Greenberg Traurig, P.A.

> years, when Plaintiff had no interest in the Property until 2011, is unduly
> burdensome and not proportional to the needs of the case.
>
> To the extent this request seeks documents for the 2010-to-present
> timeframe, Mosaic will make any relevant, responsive, non-privileged,
> unobjectionable documents that are in its possession, custody, or control
> available for review at a mutually agreeable time.

(Dkt. 43-3, pp. 12–13.)  Regardless of what Jameson now says about that objection, two aspects of it are indisputable.  First, it is not "boilerplate"; the fact-specific rationale underlying the objection will never be usable in another case.  Second, consistent with the intention of Rule 34(b)(2)(C), the objection unequivocally signaled to Jameson that Mosaic would be temporally narrowing its search for responsive materials, thereby facilitating "an informed discussion of the objection" **as of March 18, 2016**.[4]

Jameson did not, however, initiate any such discussion—not of that objection or any other.  Instead, the parties exchanged discovery, including nearly 22,000 pages of responsive documents produced by Mosaic on March 25, 2016 (*i.e.*, just a week after Mosaic served its responses), and the then they moved on.

Four months passed, during which the parties mediated, they conducted third-party discovery, they prepared and exchanged numerous expert and rebuttal reports, and they coordinated a series of twenty-four depositions to be taken in the last seven weeks of discovery.

Then, over halfway through the twenty-four deposition series—and less than two weeks before the discovery deadline—Jameson sent Mosaic the July 29, 2016 letter attached as Exhibit A to its Motion.  (Dkt. 43-1.)  The crux of the letter, which targeted Mosaic's now four-month-old discovery responses, was essentially threefold: (1) Jameson objected that Mosaic had not provided a privilege log—and an oversight that Mosaic

---

[4] *See supra*, note 3.

Greenberg Traurig, P.A.

promptly corrected[5]; (2) it objected wholesale to Mosaic's use of general objections **even though Jameson, itself, employed that a procedure in every one of its discovery responses**; and (3) it objected that *all* of Mosaic's specific objections were "conclusory and fail to provide *any* specific basis or explanation" as to why Mosaic objected to any particular request. (*See id.* at 2 (emphasis added).) On the latter two points, Jameson repeatedly emphasized that its primary concern was a general "uncertain[ty] as to the completeness" of Mosaic's responses and objections—*i.e.*, not that Jameson believed any particular documents important to its claims had not been produced. Indeed, to this day, Jameson has never specifically identified <u>any</u> information that it claims it needs and did not receive.

Mosaic wrote back on August 5, as requested, making essentially these five points: First, the delay in raising these issues was needlessly disruptive. Second, Mosaic had inadvertently forgotten to provide a privilege log, but it was rectifying that error by attaching a copy of the log to the correspondence. Third, counsel for Mosaic had endeavored, in its responses, to comply with Middle District Discovery ¶ III.A.8, which provides: "If a party objects to a request as overbroad when a narrower version of the request would not be objectionable, the documents responsive to the narrower version ordinarily should be produced without waiting for a resolution of the dispute over the scope of the request." Fourth, to help dispel any uncertainty, Mosaic confirmed that it had completed its production of all documents that it said it would produce. And fifth, Mosaic was willing "to discuss any of these issues further." (*See* Dkt. 43-2.)

To the last point, the parties took six depositions in the week following Mosaic's August 5 letter (*i.e.*, the last week of the discovery period). Counsel for Jameson did not,

---

[5] *See* Dkt. 43-2, p. 3 (logging the few documents Mosaic withheld under privilege).

Greenberg Traurig, P.A.

in any of those numerous face-to-face meetings, express to Mosaic any continued "uncertainty as to the completeness" of a response to any Request or Interrogatory.[6] Accordingly, it came as a surprise to counsel for Mosaic when Jameson filed the Motion at 4:45 p.m. on the discovery cut-off date.

## STANDARD

Resolution of a motion to compel discovery "is committed to the discretion of the trial court." *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984) (citation omitted). "The trial court's exercise of discretion regarding discovery orders will be sustained absent a finding of abuse of that discretion to the prejudice of a party." *Id.* (citation omitted).

## DISCUSSION

### I. The Court should deny the Motion as unduly delayed.

Jameson's unexplained and inexplicable delay in filing its "last-minute" Motion is reason enough to deny it. *See Simpson v. Fla. Dep't of Corr.*, 134 F. App'x 303, 305 (11th Cir. 2005) (holding that it was not an abuse of discretion for a magistrate judge to deny a motion to compel production due to the plaintiff's delay in filing it) (citing *Hinson*, 231 F.3d at 826). In Mosaic's review, every court to consider the question has concluded as much. *See, e.g., McCollum v. Puckett Mach. Co.*, 628 F. App'x 225, 228 (5th Cir. 2015) ("[A] district court is well within its discretion to deny a motion to compel filed *on or after* the court-ordered discovery deadline—regardless of the requested discovery's value to the party's case." (emphasis added)).[7]

---

[6] In this respect, the Motion does not comply with the spirit of section I.A.2 of the Middle District Discovery handbook: "The term 'confer' in Rule 3.01(g) means a substantive discussion."

[7] *See also, e.g., Pac. Marine Ctr., Inc. v. Philadelphia Indem. Ins. Co.*, No. 1:13-cv-00992-DAD-SKO, 2016 WL 110291, at *4 (E.D. Cal. 2016) ("A party seeking to compel discovery must protect itself by filing a motion promptly."); *Grey v. Dallas Indep. Sch. Dist.*, 265 F. App'x 342, 348 (5th Cir. 2008) ("[W]e are

Greenberg Traurig, P.A.

As addressed above, the rationale is straightforward and practical: "Discovery is meant to be a balanced and, hopefully, front-loaded process, not one involving deadline brinkmanship." *Haviland*, 692 F. Supp. 2d at 1044. Whether intentional or not,[8] last-minute demands like those in Jameson's Motion distract from more important issues (*e.g.*, dispositive motions) and almost inevitably interfere with longstanding schedules.

"Because no single rule or deadline can encompass the myriad variations in discovery, magistrate judges are given broad discretion to manage the overall process in the interests of dispatch and fairness." *Id.* Fairness here favors denying Jameson's Motion, as granting it now would, to Mosaic's detriment, unilaterally reopen discovery with the dispositive motions deadline barely a month away—and thus risk an attendant delay in the February 2017 trial—all because of Jameson's avoidable and unexplained delay in raising its purported concerns.

## II. Alternatively, the Court should deny the Motion for failure to make a threshold showing of relevance and proportionality.

Rule 26(b)(1) defines the scope of discovery in terms of relevance and proportionality:

---

not required to find that the district court abused its discretion by denying his motion to compel discovery, ***because it was filed on the day of the discovery deadline after an extensive discovery period***." (emphasis added)); *Turnage v. Gen. Elec. Co.,* 953 F.2d 206, 209 (5th Cir.1992) (holding that the district court did not abuse its discretion when it denied plaintiff's request to conduct potentially dispositive discovery, "given (i) the imminence of trial, (ii) ***the impending discovery deadline***, and (iii) [plaintiff's] ***failure to request an inspection earlier***" (emphasis added)); *Days Inn Worldwide, Inc. v. Sonia Investments*, 237 F.R.D. 395, 398 (N.D. Tex. 2006) ("In order to timely obtain the discovery which [the proponent] sought in his motion to compel, [the] motion had to be filed ***sufficiently in advance of the discovery deadline*** (not the motions deadline*) in order to allow it to be heard by a court, and if granted, to allow the compelled discovery to be produced prior to the deadline*." (emphasis added)); *Wells v. Sears Roebuck & Co.*, 203 F.R.D. 240, 241 (S.D. Miss. 2001) ("Obviously, problems can arise and the Court should be reasonable in working with the attorneys where necessary. However, if the conduct of a respondent to discovery necessitates a motion to compel, the requester of the discovery must protect himself by timely proceeding with the motion to compel. If he fails to do so, he acts at his own peril. . . . [A five month] ***delay is not acceptable***." (emphasis added)).

[8] Here, the timing of Jameson's Motion raises doubts as to whether it was purely tactical: *e.g.*, designed to consume time and other resources of Mosaic before the approaching dispositive motion deadline (*i.e.*, October 3).

Greenberg Traurig, P.A.

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "On motion or *on its own*, the Court must limit the frequency or extent of discovery . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii) (emphasis added). In other words, the Court must ensure that any requested discovery is both relevant and proportional before compelling its production.

As authority cited in Jameson's own briefing makes clear (Dkt. 43, p. 13), on a motion to compel, "[t]he moving party 'bears the initial burden of proving that the information sought is relevant.'" *Koster v. Landmark Am. Ins. Co.*, No. 5:14-cv-689-Oc-37PRL, 2016 WL 3014605, at *1 (M.D. Fla. May 20, 2016) (quoting *Douglas v. Kohl's Dep't Stores, Inc.*, No. 6:15-cv-1185-Orl-22TBS, 2016 WL 1637277, at *2 (M.D. Fla. Apr. 25, 2016)).[9]

Here, Jameson does not devote a single word of its twenty-one page Motion to addressing why any of the requested productions and answers are relevant to its case. (*See* Dkt. 43.) This complete "failure to make even a colorable initial showing as to

---

[9] *See also*, *e.g.*, *Douglas*, 2016 WL 1637277, at *2 ("'The proponent of a motion to compel discovery . . . bears the initial burden of proving that the information sought is relevant.'" (quoting *Moore v. Lender Processing Servs. Inc.*, No. 3:12-cv-205-J, 2013 WL 2447948, at *2 (M.D. Fla. June 5, 2013)); *Moore*, 2013 WL 2447948, at *2 ("Thus, although the undersigned is aware that the threshold for determining whether discovery is relevant is relatively low, the 'proponent of a motion to compel discovery [still] bears the initial burden of proving that the information sought is relevant.'" (quoting *Diamond State Ins. Co. v. His House, Inc.*, No. 10-20039-CIV, 2011 WL 146837, at *5 (S.D. Fla. Jan. 18, 2011)); *Diamond State*, 2011 WL 146837, at *5 (same) (quoting *Peacock v. Merrill*, No. CA 05-0377-BH-C, 2008 WL 176375, at *8 (S.D. Ala. Jan. 17, 2008)); *Peacock*, 2008 WL 176375, at *8 ("[T]hat relevancy was to be determined by the producing party . . . runs contrary to legal authority which provides that 'the proponent of a motion to compel discovery [still] bears the initial burden of proving that the information sought is relevant.'" (quoting *West v. Miller*, No. 05C4977, 2006 WL 2349988, at *2 (N.D. Ill. Aug. 11, 2006)); *Alexander v. F.B.I.*, 186 F.R.D. 154, 159 (D.D.C. 1999) ("As this court has held before, the proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant.").

Greenberg Traurig, P.A.

relevance" means that Jameson cannot "shift the burden" to Mosaic to show that the requests are irrelevant or otherwise objectionable, a failure which "dooms" Jameson's Motion. *See West*, 2006 WL 2349988, at *2 (collecting cases).

Similarly, Jameson concedes that "[a]ny application of the proportionality factors must start with the actual claims and defenses in the case, and a consideration of *how* and *to what degree* the requested discovery bears on those claims and defenses." (Dkt. 43, p. 13.) This is true because, although it is ultimately the Court's responsibility to make "a case-specific determination of the appropriate scope of discovery," it must do so using "information provided by the parties," and a "party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment.

Here again, Jameson devotes virtually no briefing to proportionality. In a single line, Jameson states: "It is Plaintiff's position that the discovery requests to Mosaic are proportional to the needs of the claims and defenses in this case." (Dkt. 43, p. 14.) While that may be Jameson's "position," simply stating it—without any support whatsoever— does nothing to illuminate *how* or *to what degree* Jameson's many requests bear on those claims or defenses. More importantly, Jameson's failure to meaningfully address proportionality leaves the Court without information sufficient to make an informed decision on the appropriate scope of discovery—a necessary element of any decision to grant a motion to compel. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).

Accordingly, Jameson's complete abdication of its obligations to address relevancy and proportionality also warrants denial of the Motion.

Greenberg Traurig, P.A.

**III.    The Court should not reach Mosaic's objections, but, if it does, it should decline to overrule them based on Jameson's hyper-technical, "do as I say, not as I do" challenges.**

The Court need not and should not reach Mosaic's objections in light of Jameson's (1) undue delay in filing the Motion; and (2) its failure to demonstrate either relevancy or proportionality. If, however, the Court does reach the objections, it should decline to overrule them.

Jameson asks this Court to overrule every one of Mosaic's objections to the Requests and Interrogatories based on three "catchall" arguments: (1) general objections are *per se* inappropriate (*see* Dkt. 43, pp. 6–7); (2) specific "objections followed by a response [are] inappropriate" (*id.* at 7–8, 20); and (3) Mosaic's specific objections are "conclusory and fail to provide any specific basis or explanation as to why any particular request is objected to" (*id.* at 9). The third argument is patently inaccurate, and the first two are overstated.

As to the first, it is true that courts typically "disfavor 'general objections' that fail to discuss deficiencies in specific discovery requests." *Puccio v. Sclafani*, No. 12-61840-CIV, 2013 WL 4068782, at *3 (S.D. Fla. 2013). However, there is no hard-and-fast rule against general objections, and courts retain the authority to enforce them even when parties use them improperly. *See id.* (enforcing general objections in response to equally general requests).

More importantly, general objections *are* in fact appropriate and permitted "when they apply to every request." Middle District Discovery (2015) at III.A.6. Mosaic's ESI objection, for instance, is particularized for this *case* (based on multiple case-specific bids from outside vendors), but it applies generally to all of Jameson's *requests* (as it is a medium-specific objection, not a topic-specific one) and thus it is appropriately asserted

12

generally. (*See* Dkt. 43-3, pp. 2–3.) Jameson has never contested the substance of that objection; rather, it simply challenges Mosaic's use of generalized objections in the abstract. That "catchall" challenge is misplaced and, frankly, appears to be more of an attempt to seize on a perceived technical error than a genuine opposition to the practice of generalized objections. Indeed, Jameson's position is completely undercut by its own ubiquitous use of generalized objections. (*See* Exs. A, B, C.)

Jameson's second position, that specific "objections followed by a response [are] inappropriate," is likewise an overstatement. Here again, there is no such *per se* rule. To be sure, sometimes objections followed by responses are unhelpful. *See, e.g.*, *Pepperwood of Naples Condo. Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.*, 2:10-CV-753-FTM-36, 2011 WL 3841557, at *2 (M.D. Fla. 2011) (expressing reluctance to sustain "notwithstanding" objections). But both the Federal Rules and the Middle District encourage parties to respond to overbroad requests if they can do so subject to a clearly stated narrowing objection or interpretation. *See, e.g.*, Fed. R. Civ. P. 34 advisory committee's note to 2015 amendment (explaining that productions subject to an objection are permissible if accompanied by a statement indicating whether documents have been withheld subject to the objection, and "the statement of what has been withheld can properly identify as matters 'withheld' anything beyond the scope of the search specified in the objection"); Middle District Discovery (2015) at III.A.7–8 (addressing production subject to narrowing objections and interpretations).

Ultimately, the specific objections asserted by Mosaic, while applicable to many Requests and Interrogatories, are few and well-considered. By far, the most frequently asserted objection goes to Requests or Interrogatories without temporal limitations, which, as discussed above, were particularly problematic in light of the Requests' and

13

Interrogatories' expansive definitions. The grounds for the objection and the restriction on the responsive search are consistently explained as follows or substantially similarly:

> Mosaic objects to this request on the grounds that it is not limited to any specific or reasonable timeframe, and is therefore overly-broad, unduly burdensome, and not proportional to the needs of this case. Mosaic or its predecessors leased or owned the real property relevant to this litigation at various time dating back to at least 1964. Asking Mosaic to provide the requested documents covering a period of potentially more than 50 years, when Plaintiff had no interest in the Property until 2011, is unduly burdensome and not proportional to the needs of this case.

> To the extent this request seeks documents for the 2010-to-present timeframe, Mosaic will make any relevant, responsive, non-privileged, unobjectionable documents available for review at a mutually agreeable time.

(*See* Dkt. 43-3, ¶¶ 3–8, 17–22, 25, 30–35; *see also* Dkt. 43-4, ¶¶ 2–4 , 7–10, 12, 15–16 (raising essentially the same objection to temporally unbounded Interrogatories).) In full compliance with Rule 34 and the Middle District Discovery Handbook, Mosaic asserts its objects, explains the grounds, and clarifies how the responsive search will be affected. That is more than enough to put Jameson on notice of the objection and to facilitate an informed conversation if Jameson has specific temporal questions or concerns.

Similarly, Mosaic applies a narrowing interpretation to all of Jameson's "contamination" Requests and Interrogatories. As explained in Mosaic's responses and answers, the reason is practical:

> Mosaic further objects to this request on the grounds that it fails to sufficiently describe what is meant by "alleged contamination" rendering the request vague, overly broad, unduly burdensome and not proportional to the needs of the case. As discussed in Mosaic's answers to Plaintiff's Interrogatories 10 and 11, to the best of its knowledge the only allegation that the Property is contaminated is by Plaintiff – and Mosaic believes any such allegation to be false, at least as it relates to Mosaic's activities.

> To the extent this request seeks documents . . related to the contamination alleged by Plaintiff, Mosaic will make any relevant, responsive, non-privileged, unobjectionable documents available for review at a mutually agreeable time – to the extent any such documents exist.

14

(*See* Dkt. 43-3, ¶¶ 17–20, 30, 33–35; *see also* Dkt. 43-4, ¶¶ 10–11 (asserting essentially the same objection to the "contamination" Interrogatories.)) This is not gamesmanship. To Mosaic's knowledge, no government agency or any private entity (other than Jameson), has ever alleged that any of the Properties are "contaminated." Jameson's contamination claims turn entirely on data taken from a study of iron levels in the nearby Mizelle Creek watershed and, contrary to Jameson's position, the authors of the study concluded: "**No evidence indicating any connection between the Mizelle Creek watershed and [Mosaic's] New Wales facility was found.**" (Excerpt, August 2012 AMEC Report, Ex. F, p. 4 (emphasis added.)) In other words, this "contamination" interpretation is a clearly explained and carefully contoured objection that complies with Rule 34 and the Middle District Discovery Handbook. [10]

Finally, Jameson takes issue with "context" Mosaic provided in response to certain Requests and Interrogatories. Aside from the timing and contamination issues addressed above, Mosaic unquestionably provided "context" to explain that it was taking a narrow, relatively literal interpretation of the Requests and Interrogatories that called for information vaguely relating to "the Property" in one way or another:

> Some additional context is appropriate. Jameson's Property is a collection of eight distinct and non-contiguous parcels, each relatively small in size. Two of the parcels are located in Hillsborough County, and six are located in Polk County. The distance between Jameson's western-most Hillsborough County parcel and its eastern-most Polk County parcel is approximately eight miles. So Jameson's Property is "scattered." Jameson's property is substantially surrounded by the Mosaic Surrounding Properties, which are only part of Mosaic's significantly larger land holdings in the area. In fact, one parcel of Jameson's Property—described in the Amended Complaint as Parcel 1 of the Hillsborough Jameson

---

[10] To the extent that Jameson is attempting to reopen discovery on this issue—a point that is not entirely clear in light of its catchall, procedural arguments—Jameson "has had ample opportunity to obtain the information by discovery in the action," Fed. R. Civ. P. 26(b)(2)(C)(2), and, in fact, took a cross-noticed 30(b)(1) and 30(b)(6) deposition duces tecum of the individual and the author of the study on which Jameson primarily relies. (*See* AMEC Subpoena, Ex G; Kenney Dep. Notice, Ex. H.)

Greenberg Traurig, P.A.

> Property—is completely land-locked, and cannot be accessed without trespassing upon Mosaic's property.
>
> Mosaic has engaged and little or no activity that is specific to Jameson's discrete Property, apart from such Property's status as part of the overall former Kingsford mining complex. To the extent this interrogatory seeks information for the 2010-to-present time frame, and with the above context in mind, the following information is responsive . . .

(Dkt. 43-4, ¶¶ 2–3, 7–10, 12; *see also* Dkt. 43-3, ¶ 13.)  Jameson's flippant argument that it is "seeking . . . ***documents***," not "additional context," ignores the challenges inherent in responding to vague requests and interrogatories like those it propounded.  (Dkt. 43, p. 14.)  The context to which Jameson objects reflects a good-faith effort by Mosaic to explain its concerns regarding the discovery requests and the narrow construction it would be using when conducting its responsive search.

In short, Mosaic reaffirms its objections, which are both rational and detailed, functionally advanced the discovery process, and, most importantly, placed Jameson on notice of the medium, timeframe, and narrowing constructions of Mosaic's responsive search ***nearly five months*** before Jameson filed the Motion.  Whatever their technical deficiencies may be, if any, Mosaic's objections definitively accomplished Rule 34's goal of making "an informed discussion" possible long ago.  It was Jameson's choice not to have that discussion and, instead, to wait until 4:45 p.m. on the day of the discovery cutoff to file its "tactical" Motion.

## CONCLUSION

Ultimately, motions to compel turn on the concept of prejudice.  Courts have discretion to deny any motion to compel so long as the denial will not prejudice the moving party.  *Commercial Union*, 730 F.2d at 731.  Here, while the text of Jameson's Motion does not say much about prejudice, its timing does.  If any of the purported

16

deficiencies in Mosaic's responses had really prejudiced Jameson, Plaintiff certainly would not have waited four months and twenty-four depositions before seeking relief at the "Eleventh Hour." As addressed above, Mosaic respectfully requests that the Court deny Jameson's Motion to Overrule Defendant's Objections and Motion to Compel Discovery (Dkt. 43) as untimely, unwarranted, or inequitable. It is time for the parties to move on to the merits stage of this case.

Dated: August 29, 2016

I. William Spivey, II (FBN 0701076)
spiveyw@gtlaw.com
**GREENBERG TRAURIG, P.A.**
450 South Orange Avenue, Suite 650
Orlando, FL 32801
Telephone: (407) 420-1000
Facsimile: (407) 420-5909

Respectfully submitted,

/s/ David B. Weinstein
David B. Weinstein (FBN 604410)
weinsteind@gtlaw.com
Jonathan S. Tannen (FBN 70842)
tannenj@gtlaw.com
**GREENBERG TRAURIG, P.A.**
101 E. Kennedy Blvd., Ste. 1900
Tampa, Florida 33602
Telephone: (813) 318-5700
Facsimile: (813) 318-5900
Secondary Email: dunnla@gtlaw.com;
FLService@gtlaw.com

*Counsel for Defendant, Mosaic Fertilizer, LLC*

## CERTIFICATE OF SERVICE

I certify that on August 29, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ David B. Weinstein
Attorney